IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

OHIO LEARNING CENTERS, LLC, ET AL.   *

   PLAINTIFFS,   *

       V.   *   CIVIL ACTION NO.: RDB-10-1932

SYLVAN LEARNING, INC., ET AL.   *

   DEFENDANTS.   *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**MEMORANDUM OPINION**

On September 23, 2011, Plaintiffs Ohio Learning Centers, LLC ("OLC") and Janet Tomaskovich ("Tomaskovich") (collectively "Plaintiffs") filed a First Amended Complaint against Defendants Sylvan Learning, Inc. ("SLI"), Sylvan Learning Centers, LLC ("SLC"), Educate, Inc., Education Solutions, LLC, and Randy Rohde, alleging numerous causes of action arising out the Plaintiffs' purchase of a Sylvan Learning Center in Westlake, Ohio. Among the motions pending before this Court is Education Solutions, LLC and Randy Rohde's (collectively, "Defendants") Motion to Dismiss First Amended Complaint (ECF No. 110). This Court has reviewed the record, as well as the pleadings and exhibits, and conducted hearings on February 2, 2011, February 14, 2011, and March 8, 2012 pursuant to Local Rule 105.6 (D. Md. 2011).[1] As this Court lacks personal jurisdiction over the Defendants Education Solutions, LLC and Randy Rohde, their Motion is GRANTED for the reasons that follow.

---

[1] These hearings were not specifically held with respect to the instant motion, but instead generally related to the underlying claims by the Plaintiffs against defendants SLI and SLC.

1

**BACKGROUND**

The background facts of this case have been fully set forth in this Court's previous Memorandum Opinion entered on March 27, 2012, and will not be fully reiterated here. *See Ohio Learning Centers, LLC v. Sylvan Learning, Inc.*, 2012 WL 1067668 (D. Md. March 27, 2012). Generally speaking, Plaintiffs allege that Defendants SLI and SLC fraudulently induced them to purchase, finance, and run a Sylvan Learning Center franchise located in Westlake, Ohio. With respect to Defendants Education Solutions, LLC ("ES") and Randy Rohde ("Rohde"), the Plaintiffs assert claims for tortious interference in business relationships (Count 9); tortious interference in contractual relationships (Count 10); violations of Ohio statutes governing deceptive trade practices (Count 12); violations of the Sherman Antitrust Act and the Robinson-Patman Act under Title 15 of the United States Code (Count 13); violations of Ohio antitrust law (Count 14); and civil conspiracy (Count 15).

Rohde, who is an Ohio resident, owns Education Solutions, LLC. First Am. Compl. ("FAC") ¶¶ 6-7, ECF No. 103. ES is a limited liability company organized under the laws of Ohio and operates a number of franchised Sylvan Learning centers in Ohio. *Id.* Rohde asserts that neither he nor ES own any property in Maryland, are licensed to do business in Maryland, pay taxes in Maryland, employ anyone in Maryland, or maintain bank accounts in Maryland. Rohde Aff. ¶¶ 4-5, ECF No. 110-2. Notwithstanding these assertions, the Plaintiffs maintain that this Court may still exercise personal jurisdiction over the foreign defendants under "multiple theories." Pls.' Opp'n at 6, ECF No. 115. Specifically, Plaintiffs argue that Defendants Rohde and ES have the requisite *minimum contacts* with the State of

Maryland so as to establish both specific and general jurisdiction. Alternatively, Plaintiffs argue that this Court has jurisdiction over the non-resident defendants under the conspiracy theory of personal jurisdiction.

### STANDARD OF REVIEW

When a non-resident defendant challenges a court's personal jurisdiction under Rule 12(b)(2), the judge decides the jurisdictional question, and the plaintiff has the burden of proving grounds for jurisdiction by a preponderance of the evidence. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993). This requires the plaintiff to produce competent evidence to sustain jurisdiction. *Nichols v. G.D. Searle & Co.*, 783 F. Supp. 233, 235 (D. Md. 1992). If the court is deciding the issue without a hearing, the plaintiff is required to only make a *prima facie* showing of jurisdiction. *Mylan*, 2 F.3d at 60. However, a court "need not credit conclusory allegations or draw farfetched inferences" in deciding jurisdictional disputes. *Chattery Int'l, Inc. v. JoLinda, Inc.*, No. WDQ-10-2236, 2011 WL 1230822, at *13 (D. Md. Mar. 28, 2011).

Before a court can exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute pursuant to Federal Rule of Civil Procedure 4(k)(1)(a), and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements. *Carefirst*, 334 F.3d at 396; *see also Christian Sci. Bd. Of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Although Maryland courts "have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set out by the Due

Process Clause of the Constitution," *Carefirst*, 334 F.3d at 396, the long-arm statute must still be examined as part of the two-step personal jurisdiction analysis. *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006) (explaining that although the "long-arm statute is coextensive with the limits of personal jurisdiction set by the due process . . . [it does not] mean . . . that it is now permissible to dispense with analysis under the long-arm statute"); *see also* MD. CODE ANN., CTS. & JUD. PROC. § 6-103(b) (Maryland long-arm statute). Therefore, to satisfy the long-arm prong of a personal jurisdiction analysis, a plaintiff must specifically identify a provision in a Maryland statute that authorizes jurisdiction. *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). Although it is preferable for a plaintiff to identify the statute authorizing jurisdiction in its complaint, a plaintiff alternatively may reference the applicable statute in its response to a defendant's motion to dismiss.² *Johansson Corp. v. Bowness Constr. Co.*, 304 F. Supp. 2d 701, 704 n. 1 (D. Md. 2004).

**ANALYSIS**

The Fourteenth Amendment's Due Process Clause "sets the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, __ U.S. __, 131 S. Ct. 2846, 2853 (2011). In the "canonical" case of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the Supreme Court held that state courts may exercise jurisdiction over non-resident defendants only if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not

---

² While the Plaintiffs cite no statutory provision authorizing jurisdiction over the Defendants under the Maryland long-arm statute in their Amended Complaint, in their opposition, *see* Pls. Opp'n at 13, they do rely on Section 6-103(b)(1), which extends personal jurisdiction to any "person, who directly or *by an agent* . . . [t]ransacts any business . . . in the State." MD. CODE ANN., CTS. & JUD. PROC. § 6-103(b)(1) (emphasis added).

offend traditional notions of fair play and substantial justice." *Goodyear*, 131 S. Ct. at 2853 (quoting *Int'l Shoe*, 326 U.S. at 316). These minimum contacts, to the extent they exist, give rise to two types of adjudicatory authority—specific jurisdiction and general jurisdiction.

Specific jurisdiction exists where the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Put another way, when the defendant's contacts with the forum state "gave rise to the episode-in-suit," then a court has specific jurisdiction over that defendant. *Goodyear*, 131 S. Ct. at 2853 (citing *Int'l Shoe*, 326 U.S. at 317) (emphasis removed). As the Court recently noted in *Goodyear*, "'single or occasional acts' in a State *may* be sufficient to render a corporation answerable in that State *with respect to those acts*, though not with respect to matters unrelated to the forum connections." *Id.* (citing *Int'l Shoe*, 326 U.S. at 318) (emphasis added). In determining whether specific jurisdiction exists, the United States Court of Appeals for the Fourth Circuit has instructed courts to examine "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397 (internal quotation marks and citation omitted).

On the other hand, if the defendant's contacts with the forum state are *not* the basis for the suit, a court may nevertheless exercise general jurisdiction over a foreign defendant if "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe*, 326 U.S. at 318. In other words, a court

5

may exercise general jurisdiction over a defendant when the non-resident maintains "continuous and systematic" contacts with the forum state. *Helicopteros*, 466 U.S. at 416; *see also Carefirst*, 334 F.3d at 397.

Here, Plaintiffs allege that Defendants Rohde and ES are subject to both specific and general jurisdiction in Maryland based on a number of alleged contacts with the State. For example, the Plaintiffs allege that: (1) Defendant Rohde is "very well acquainted with the executive leadership of Sylvan, with its headquarters located in Maryland;" (2) "Rohde, as a member of the [Franchise Owner's Association] Board, has quarterly meetings with the executive leadership of Sylvan at the Maryland headquarters;" (3) at some point, Rohde "spent a week at Sylvan headquarters in Maryland for 'Sylvan 101' training;" (4) Rohde owns a number of Sylvan franchises, and therefore makes regular monthly payments to Sylvan in Maryland; and (5) Rohde and his franchises are required to purchase supplies, such as books and promotional materials, from Sylvan in Maryland. *See* Pls.' Opp'n at 8-9.

It is abundantly clear that these isolated contacts, taken as true, do not suffice to establish specific jurisdiction over Rohde and ES. The causes of action asserted against Rohde and ES in the Plaintiffs' Amended Complaint relate to alleged tortious conduct perpetrated in connection with the marketing and operation of Sylvan franchises in Ohio. The alleged contacts set forth by the Plaintiffs are business dealings that did not "g[ive] rise to the episode-in-suit," *Goodyear*, 131 S. Ct. at 2853, and the tortious conduct at issue clearly did not "aris[e] out of or relate[ ] to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414 n.8.

In addition, it is clear that the infrequent and negligible contacts between the Defendants and the State of Maryland are not sufficient to establish general jurisdiction either. Rohde and ES certainly have dealings with Sylvan and its corporate headquarters in Maryland, but those contacts can hardly be said to be "continuous and systematic." In *Goodyear*, the Supreme Court recently revisited the doctrine of general jurisdiction and carefully analyzed the only two post-*International Shoe* opinions that "considered whether an out-of-state corporate defendant's in-state contacts were sufficiently 'continuous and systematic' to justify the exercise of general jurisdiction over claims unrelated to those contacts." *Goodyear*, 131 S. Ct. at 2854.

In *Perkins v. Benguet Consolidated Mining Company*, 342 U.S. 437 (1952), the Court concluded that a Philippine corporation's contacts with the State of Ohio *were* sufficiently continuous and systematic to establish general jurisdiction. In noting that *Perkins* remains the "textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum," the *Goodyear* Court summarized *Perkins* as follows:

> Sued in Ohio, the defendant in *Perkins* was a Philippine mining corporation that had ceased activities in the Philippines during World War II. To the extent that the company was conducting any business during and immediately after the Japanese occupation of the Philippines, it was doing so in Ohio: the corporation's president maintained his office there, kept the company files in that office, and supervised from the Ohio office "the necessarily limited wartime activities of the company." *Perkins*, 342 U.S., at 447–448, 72 S. Ct. 413. Although the claim-in-suit did not arise in Ohio, this Court ruled that it would not violate due process for Ohio to adjudicate the controversy.

*Goodyear*, 131 S. Ct. at 2856.

By contrast, and much more relevant to the case at bar, the *Goodyear* Court next summarized its holding in *Helicopteros Nacionales de Columbia, S.A. v. Hall*—a case that found no continuous and systematic contacts sufficient to warrant the exercise of general jurisdiction:

> In that case, survivors of United States citizens who died in a helicopter crash in Peru instituted wrongful-death actions in a Texas state court against the owner and operator of the helicopter, a Colombian corporation. The Colombian corporation had no place of business in Texas and was not licensed to do business there. "Basically, [the company's] contacts with Texas consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from [a Texas enterprise] for substantial sums; and sending personnel to [Texas] for training." 466 U.S., at 416, 104 S. Ct. 1868. These links to Texas, we determined, did not "constitute the kind of continuous and systematic general business contacts . . . found to exist in *Perkins*," and were insufficient to support the exercise of jurisdiction over a claim that neither "ar[o]se out of . . . no[r] related to" the defendant's activities in Texas. *Id.*, at 415–416, 104 S. Ct. 1868 (internal quotation marks omitted).

*Goodyear*, 131 S. Ct. at 2856. *Helicopteros* concluded that "mere purchases [made in the forum state], even if occurring at regular intervals, are not enough to warrant a State's assertion of [general] jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." 466 U.S. at 418.

The jurisdictional contacts alleged by the Plaintiffs in this case are akin to those considered in *Helicopteros* and this Court can discern no meaningful distinction that would allow this Court to exercise general jurisdiction over the Defendants. Put simply, doing business with, and sending checks to a Maryland corporation is a far cry from the type of contacts necessary for a court to exercise general jurisdiction. The Fourth Circuit "has made

8

clear that due process requires that a defendant's contacts with the forum state be tantamount to physical presence there." *Ritz Camera Ctrs., Inc. v. Wentling Camera Shops, Inc.*, 982 F. Supp. 350, 353 (D. Md. 1997) (citation omitted).  The Defendants' brief contacts with the State of Maryland in this case do not amount to "physical presence" and cannot be considered sufficiently "continuous and systematic" to warrant exercising general jurisdiction.

Plaintiffs' remaining ground on which to base jurisdiction—the conspiracy theory of personal jurisdiction—fares no better.  The conspiracy theory of personal jurisdiction permits a court to exercise personal jurisdiction over a nonresident defendant without sufficient contacts with the forum if the nonresident defendant was part of a conspiracy that committed jurisdictionally sufficient acts within the forum.  *See Mackey v. Compass Mktg.*, 892 A.2d 479, 484 (Md. 2006) ("[T]he conspiracy theory permits certain actions done in furtherance of a conspiracy by one co-conspirator to be attributed to other co-conspirators for jurisdictional purposes.").  In *Mackey*, the Court of Appeals of Maryland squarely held that Maryland law does recognize the conspiracy theory of personal jurisdiction.

However, it is an inescapable constitutional requirement that a plaintiff must first make a *prima facie* claim that a conspiracy existed before a defendant is hailed into a foreign court based on the conspiracy theory of personal jurisdiction.  Without the requisite conspiracy, there can be no basis to attribute the overt acts committed by another to a nonresident defendant without direct contacts with the forum.  *See Mackey*, 892 A.2d at 490-91 (stating that a "co-conspirator to whom the acts of another co-conspirator are attributed must have agreed to participate in a conspiracy that he or she could reasonably have

expected at the time of agreement to involve the forum-related actions attributed to him or her"). As this Court has previously noted, to properly assert a civil conspiracy claim, it is necessary for a plaintiff to first plead the existence of "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or means employed must result in damages to the plaintiff." *AP Links, LLC v. Global Golf, Inc.*, No. CCB-08-0705, 2008 WL 4225764, at *4 (D. Md. Sept. 2, 2008).

In this case, Plaintiffs cannot make the requisite *prima facie* showing because the Amended Complaint is devoid of facts, that even if taken as true, would support a civil conspiracy claim. Without factual support, the Plaintiffs merely state that "Sylvan and ES knowingly and intentionally conspired and colluded to commit a wrongful act against OLC." FAC ¶ 271. This conclusory allegation, without supporting facts demonstrating "an agreement or understanding" between Sylvan and the Defendants, is not enough to support this Court's exercise of personal jurisdiction over Defendants Rohde and ES. *See Nelson v. City of Crisfield*, No. L-10-1816, 2010 WL 4455923, at *4 (D. Md. Nov. 5, 2010) ("A plaintiff must advance more than conclusory allegations of conspiracy, unsupported by a factual showing of participation in a joint plan of action."). Accordingly, this Court rejects the Plaintiffs' attempt to use the conspiracy theory of personal jurisdiction to hail the foreign defendants, Rohde and ES, into this Court.

In sum, the Plaintiffs have failed to prove the existence of a ground for personal jurisdiction over Defendants Educations Solutions, LLC and Randy Rohde.

## CONCLUSION

Accordingly, for the reasons stated above, the Defendant's Motion to Dismiss First Amended Complaint (ECF No. 110) is GRANTED.

A separate Order follows.

Dated: April 24, 2012

/s/
Richard D. Bennett
United States District Judge