IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| OHIO LEARNING CENTERS, LLC, *ET AL.* | * | |
| PLAINTIFFS, | * | |
| | * | CIVIL ACTION NO.: RDB-10-1932 |
| V. | * | |
| SYLVAN LEARNING, INC., *ET AL.* | * | |
| DEFENDANTS. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

On September 23, 2011, Plaintiffs Ohio Learning Centers, LLC ("OLC") and Janet Tomaskovich ("Tomaskovich") (collectively "Plaintiffs") filed a First Amended Complaint against Defendants Sylvan Learning, Inc. ("SLI"), Sylvan Learning Centers, LLC ("SLC"), and Educate, Inc. (collectively, "Sylvan" or "Defendants"), Education Solutions, LLC, and Randy Rohde[1] alleging numerous causes of action arising out of the Plaintiffs' purchase of a Sylvan Learning Center franchise in Westlake, Ohio. Broadly, Plaintiffs allege that the Defendants fraudulently induced them to purchase, finance, and run the franchise. More specifically, Plaintiffs argue that Sylvan breached the franchise contract, breached warranties, committed fraud, made various misrepresentations, allowed territorial infringement,

---

[1] On April 24, 2012, this Court entered a Memorandum Opinion and Order dismissing Defendants Education Solutions, LLC and Randy Rohde for want of personal jurisdiction. *See Ohio Learning Ctrs., LLC v. Sylvan Learning, Inc.*, No. RDB-10-1932, 2012 WL 1416905 (D. Md. April 24, 2012) (ECF Nos. 141 & 142). Consequently, this Memorandum Opinion concerns only those allegations pertaining to SLI, SLC, and Educate.

committed tortious interference in business relationships, and violated numerous Ohio and Maryland statutes governing contracts and franchise relationships.

Pending before this Court is the Defendants' Motion to Strike Plaintiffs' Demand for a Jury Trial (ECF No. 111), Defendants' Motion to Dismiss (ECF No. 114), and Plaintiffs' Motion for Immediate Summary Judgment (ECF No. 132). This Court has reviewed the record, as well as the pleadings and exhibits, and conducted hearings on February 2, 2011, February 14, 2011, and March 8, 2012.[2] For the reasons that follow, the Defendant's Motion to Strike Plaintiffs' Demand for a Jury Trial (ECF No. 111) is DENIED; Plaintiffs' Motion for Immediate Summary Judgment (ECF No. 132) is DENIED as MOOT; and Defendants Motion to Dismiss (ECF No. 114) IS GRANTED IN PART and DENIED IN PART. Specifically, it is denied with respect to Counts 3 through 5, 7, 18, and 20 through 22, and is granted as to all other counts.

## BACKGROUND & PROCEDURAL HISTORY

The background facts of this case were fully set forth in this Court's previous Memorandum Opinions entered on March 27, 2012 and April 24, 2012. *See Ohio Learning Ctrs., LLC v. Sylvan Learning, Inc.*, No. RDB-10-1932, 2012 WL 1067668 (D. Md. March 27, 2012) (hereinafter, "*OLC v. Sylvan I*") (granting Defendants summary judgment on their amended counterclaims;[3] *Ohio Learning Ctrs., LLC v. Sylvan Learning, Inc.*, No. RDB-10-1932, 2012 WL 1416905 (D. Md. April 24, 2012) (hereinafter, "*OLC v. Sylvan II*") (granting

---

[2] These hearings concerned not only the Plaintiffs' allegations and the instant motion to dismiss, but the Defendants' motion for temporary restraining order, and motion for summary judgment on their amended counterclaims.

[3] *See infra* note 9 for a discussion of the nature of this Court's treatment of the Defendants' amended counterclaims.

Defendants Education Solutions, LLC and Randy Rohde's motion to dismiss).   That background is repeated here, in part, so as to provide context for the pending motions.

Defendants are in the business of providing personalized learning programs for students throughout the United States.   In this regard, they have developed proprietary programs, materials, diagnostic tests, and other related education systems designed to be utilized, administered and taught by trained Sylvan personnel.   Defendants have numerous trademarks in connection with their proprietary education system.

In early 2007, Plaintiff Janet Tomaskovich, the principal and sole member of Ohio Learning Centers, LLC, was hired by Sylvan Learning, Inc. to be the temporary director for a Sylvan Learning Center in Westlake, Ohio.   At that time, this center, known as the Westlake Learning Center, was owned and operated directly by Sylvan Corporate and it was not a franchise.   Shortly after assuming the temporary director position at the Westlake Learning Center, Defendants expressed interest in selling, and Tomaskovich expressed interest in buying the Westlake Learning Center as a franchise.

According to the Plaintiffs, the Westlake Learning Center was underperforming and the Defendants' parent company, Educate, Inc., was under pressure to "reduce its debt, raise cash, and complete [a] merger."  Pls.' Am. Compl. ¶ 18.   In this regard, Plaintiffs allege that Educate, Inc. and the Sylvan Defendants sold or attempted to sell all corporate-owned Sylvan Learning Centers.   *Id.* ¶¶ 19-22.   The Plaintiffs claim that only two weeks into Tomaskovich's employment at the Westlake Learning Center, the Defendants began negotiations with Tomaskovich regarding the sale of the Center as a franchise.   *Id.* ¶ 30.

Indeed, Plaintiffs contend that Defendants pursued a "hard sell" strategy, and encouraged Tomaskovich to "act fast." *Id.*

Notwithstanding this alleged "hard sell" strategy, Tomaskovich was willing to negotiate, and as early as April 4, 2007, sent a letter to Greg Helwig, a Vice President at Sylvan Learning, Inc. ("SLI") in which she made an offer of $150,000 to purchase the Westlake Learning Center. *See* Apr. 4 Helwig Ltr., ECF No. 71-4. In that letter, Tomaskovich acknowledged that the Westlake Center was the "poorest performing" center in Northeast Ohio, but maintained that "I am the most familiar with this Center and believe I can make a success of this Center as its franchise owner." *Id.* Regarding the performance and her proposed operation of the Westlake Center, Tomaskovich "justifi[ed]" her offer on the grounds that that the Center's "revenues are significantly under budget," its lease expense "is significantly higher than other [Centers]," "[c]osts, such as labor, are substantially higher in relationship to revenues," and that if Tomascovich were to open a new Center, she "would have more control of major commitments like lease costs." *Id.* Finally, Tomaskovich noted that "better Centers are available," and indicated that SLI was to contact her "financial advisor" for further negotiations. *Id.*

Negotiations were ongoing, and on July 26, 2007, Ohio Learning Centers, LLC entered into an Asset Purchase Agreement with Sylvan Learning Centers, LLC whereby OLC purchased assets used in the operation of the Westlake Learning Center. *See* Defs.' Am. Countercl. ¶ 7. The asset purchase price was $142,000, of which $138,000 was to be paid via two Promissory Notes payable to SLC and guaranteed by Tomaskovich. *See id.* ¶¶ 8-9.

4

On the same day, OLC and Sylvan Learning, Inc. entered into a License Agreement whereby SLI granted OLC a license to operate the Westlake Center as a Sylvan franchise. *Id.* ¶ 13. Under the License Agreement, the licensing fee was $48,000, *id.* ¶ 14, which resulted in OLC and Tomaskovich owing $190,000 to complete the transaction. Of the $190,000 total due at closing, Tomaskovich paid $30,000 in cash and executed two Promissory Notes for the remaining $160,000.[4] Tomaskovich personally guaranteed OLC's obligations to SLI. *See* License Agmt., ECF No. 71-6.

The License Agreement granted OLC and Tomaskovich authorization to operate a Sylvan franchise using federally registered Sylvan trademarks, and also granted to Plaintiffs an exclusive territory in which to operate the Westlake Learning Center. *See* Defs.' Mot. Summ. J. at 8; *see also* License Agmt. The License Agreement also contained a non-compete clause providing that, in the event the License Agreement was terminated, the Plaintiffs were prohibited from operating a competing learning center for two years and within five miles of the Westlake Center. License Agmt. ¶ 11.5.2. Defendants claim to have spent "large sums of money" advertising and promoting the Sylvan marks as well as on developing educational programs throughout the United States. Defs.' Am. Countercl. ¶ 18. As a result, Defendants maintain that the Sylvan Marks "have become associated in the minds of the consumer public with the provision of, among other things, high quality and effective personalized learning programs for students through the use of the Sylvan System." *Id.*; *see also* Feb. 2, 2011 Hrg. Tr. at 21-22.

---

[4]  The Promissory Notes were amended in June of 2008 to amend the Notes' amortization tables, payment schedules, and payment commencement dates. The other provisions of the Promissory Notes remained the same. *See* Pls.' Am. Compl. ¶ 90; Defs.' Am. Countercl. ¶¶ 31-34.

After executing the Asset Purchase Agreement, Promissory Notes, and License Agreement, Plaintiffs began operating the Westlake Learning Center as a Sylvan franchise with the attendant Sylvan Marks and operational materials.  Shortly thereafter, however, it became apparent that the operational expenses of running the Center exceeded revenue, and while the Plaintiffs were able to make advertising and royalty payments, they were unable make payments on the Promissory Notes.  Even though under the amendments to the Promissory Notes, *see supra* note 4, payments on the Notes were deferred until March and April of 2009, Pls.' Am. Compl. ¶ 90, Plaintiffs ceased making the required payments on the Notes as early as June 2009.[5]

On March 25, 2010, Defendants sent Plaintiffs two Notices of Default and Intent to Terminate License Agreement.  *See* Default Notices, ECF No. 71-10.  In those notices, the Defendants indicated that due to the failure to make installment payments on the Promissory Notes, the Plaintiffs were in breach of the Licensing Agreement.  *See id.* Furthermore, the notices advised the Plaintiffs that should they fail to pay the entire balance—totaling some $46,268.45—then the Defendants would have the right to terminate the License Agreement effective April 17, 2010.  *See id.*

The Plaintiffs did not cure their default, and instead filed a lawsuit in the Cuyahoga County Court of Common Pleas in Cuyahoga County Ohio on April 16, 2010, one day before Defendants indicated they had the right to terminate the License Agreement.  At that

---

[5]  There is some evidence that the Plaintiffs did not completely cease making payments on the Promissory Notes at this time.  Rather, Tomaskovich claims that she sent "some token amounts on my own."  Tomaskovich Dep. Tr. at 180, ECF No. 112-1.  However, it is abundantly clear Tomaskovich's unilateral payment reduction scheme was never accepted by the Defendants—indeed Tomaskovich never presented a revised program to the Defendants.  *See id.* at 181-82.

time, Tomaskovich maintains that she was also advised by her former attorney to cease making her scheduled royalty and advertisement payments in addition to the payments due under the Promissory Notes. *See* Tomaskovich Ltr., ECF No. 136-1. She further alleges that her former attorney also advised her that even though she had not made payments pursuant to the Promissory Notes, she would be able to operate the Westlake Learning Center under the Sylvan moniker. *See id.*

Plaintiffs' case was thereafter removed to the United States District Court for the Northern District of Ohio on May 11, 2010. That court, in ruling on the Defendants' motion to dismiss or alternatively for transfer of venue, subsequently transferred the case to this Court on July 14, 2010. *See Ohio Learning Ctrs. LLC v. Sylvan Learning, Inc.*, No. 1:10-cv-1062, 2010 WL 2803042 (N.D. Oh. July 14, 2010). Plaintiffs claim that their former counsel did not apprise them of the transfer, and was generally derelict in his duty in prosecuting this case.[6] *See* Tomaskovich Ltr.

From the time that the Plaintiffs instituted this action, through the present, Plaintiffs have still failed to make any payments due under the Promissory Notes. Defendants did not terminate the License Agreement on April 17, 2010, but sent the Plaintiffs a Notice of Termination on December 13, 2010. *See* Termination Ltr., ECF No. 71-11. In that letter, Defendants notified the Plaintiffs that unless they cured all defaults under the Promissory

---

[6]  During the course of this litigation, Plaintiffs have been represented by three separate attorneys. The first, Mr. Henry Novak, has been disbarred and Plaintiffs have instituted a malpractice action against him. The second, Mr. Seann Malloy, represented the Plaintiffs from approximately January 21, 2011 through July 12, 2011. Mr. Malloy represented the Plaintiffs at the February 2 and February 14, 2011 hearings on the Defendants' motions for temporary restraining order and preliminary injunction which this Court granted. The third, Ms. Michelle Daley, entered here appearance in this case on July 13, 2011, and continues to represent the Plaintiffs.

Notes, the Notice of Termination would become effective on December 28, 2010, and the License Agreement would automatically terminate on that date. *Id.* The Plaintiffs were further advised that if the License Agreement were terminated, the Plaintiffs were to cease "all operations and all use of Sylvan's marks, materials, systems, and know-how." *Id.*

The Plaintiffs made no payments and the License Agreement was terminated on December 28, 2010. On January 13, 2011, Tomaskovich sent an e-mail to Defendants and advised that because she had been out of town, she had not received the Notice of Termination, and only became aware of the termination on the day she sent the e-mail. Tomaskovich e-mail, ECF No. 130-4. In her e-mail, Tomaskovich specifically stated that she "will cease operating [the Westlake Learning Center] at close of business today, January 13, 2011." *Id.*

On January 26, 2011, the Defendants filed a motion for temporary restraining order on the ground that Plaintiffs continued to operate the Westlake Learning Center under the Sylvan moniker even though the License Agreement had been terminated. On February 2, 2011, this Court held a hearing on the Defendants' motion, and granted the request for a temporary restraining order. *See* TRO Order, ECF No. 44.

During the February 2, 2011 hearing, counsel for the Plaintiffs admitted that Tomaskovich was still operating the Westlake Learning Center well after Tomaskovich told the Defendants that she would cease operating the Center. *See* Feb. 2 Hrg. Tr. at 91 ("my client's [sic] operating a business with, I think, between 10 and 20 employees. . . . If this . . . [Temporary Restraining Order] is granted . . . my client's business is forced to shut down.").

On the basis of this admission and other testimony[7] elicited at the February 2 hearing, this Court granted the Defendants' request for a temporary restraining order.  *See* TRO Order, ECF No. 44.  In noting that the Defendants had established a likelihood of success on the merits regarding their Amended Counterclaims, this Court specifically ordered that the Plaintiffs "shall not use any or all of the trademarks, service marks, or trade names associated with Defendant SLI for any purpose." *Id.*  Furthermore, this Court ordered the Plaintiffs to "remove immediately and until further ruling by this Court all signs, designs and insignia in any way indicating or suggesting that Plaintiffs' business establishment is related to or connected with SLI, its subsidiaries or affiliates, or any of SLI's licensees." *Id.*  This Court set a preliminary injunction hearing for February 14, 2011.

At the February 14 hearing, the Defendants introduced further evidence in support of their argument that Tomaskovich continued to operate the Westlake Learning Center after the License Agreement had been terminated and after she told the Defendants that she would cease all operations.  For example, on January 31, 2011, a Sylvan representative visited the Westlake Learning Center and observed that a "Sylvan" sign was still displayed in front of the Center.  Moreover, the representative entered the Center and observed "Sylvan marketing material[,] Sylvan on an entrance rug[,] [a]nd materials that Sylvan uses in their center instruction area."  Feb. 14, 2011 Hr'g Tr. at 37, ECF No. 130-6.  This Court then granted the Defendants' motion for preliminary injunction.  *See* PI Order, ECF No. 63.

---

[7]  For example, on January 19 and 20, 2011, a Sylvan employee saw students and teachers inside the Westlake Learning Center and also saw a lit "Sylvan" sign in front of the building.  *See* TRO Mot., Ex. 8, Krafchek Aff., ECF No. 36-9.  In addition, on January 26, 2011, a Sylvan employee telephoned the Westlake Learning Center and Tomaskovich answered "Westlake Learning Center." *See* TRO Mot., Ex. 9, Rollins Aff., ECF No. 36-10.

On March 27, 2012, this Court entered a Memorandum Opinion and Order granting summary judgment to the Sylvan Defendants on their Amended Counterclaims. *See OLC v. Sylvan I*, 2012 WL 1067668.  This Court first held that the contracts negotiated between the parties (the License Agreement, Asset Purchase Agreement, and Promissory Notes) were valid and enforceable contracts. *Id.* at *8.  Next this Court held that the Plaintiffs breached those agreements by failing to make the required payments—notwithstanding the Plaintiffs' argument that the Sylvan Defendants materially breached those agreements first. *Id.* at *9-10.  However, given the federal policy against piecemeal litigation,[8] this court withheld ruling on any damages owed to the Defendants insofar as Defendants' entitlement to damages must await the adjudication of the Plaintiffs' remaining claims. *See infra* note 9.

On April 24, 2012, this Court entered a Memorandum Opinion and Order granting Defendants Education Solutions, LLC and Randy Rohde's Motion to Dismiss First Amended Complaint. *See OLC v. Sylvan II*, 2012 WL 1416905.  This Court dismissed those defendants for lack of personal jurisdiction.

Pending before this Court is the Defendants' Motion to Strike Plaintiffs' Demand for a Jury Trial (ECF No. 111), Defendants' Motion to Dismiss (ECF No. 114), and Plaintiffs' Motion for Immediate Summary Judgment (ECF No. 132).  This Court will discuss the factual background and allegations pertaining to the Plaintiffs' Amended Complaint in the sections below.

---

[8] *See* 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1426 (3d ed. 2010).

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In ruling on such a motion, this Court is guided by the Supreme Court's instructions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) which "require complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, __ F.3d __, __, 2012 WL 2589229, at *2 (4th Cir. July 5, 2012) (citation omitted). The Supreme Court's *Twombly* decision articulated "[t]wo working principles" courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678.

First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.) Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Id.* at 679.

Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Although the plausibility requirement does not impose a "probability

requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, __ (4th Cir. May 14, 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim.") (emphasis in original) (internal quotation marks and citation omitted). In short, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief." *Iqbal*, 556 U.S. at 664.

## ANALYSIS

## I. PLAINTIFFS' MOTION FOR IMMEDIATE SUMMARY JUDGMENT (ECF NO. 132)

Shortly before the March 8, 2012 hearing held in this case, the Plaintiffs filed a motion for immediate summary judgment, to permanently strike certain of Defendants' pleadings, and in objection to Defendants' request to depose Plaintiff Janet Tomaskovich. (ECF No. 132). Essentially, Plaintiffs argue that because Defendants SLI and SLC had forfeited their corporate charters with the State of Maryland, they were prohibited from maintaining or defending any lawsuit in the state. Apparently as a result of a tax return filing oversight, the corporate charters of Defendants SLI and SLC were, in fact, forfeited on November 15, 2011. *See* Pls. Mot., Ex. A, ECF No. 132-3. However, on March 6, 2012, the Defendants resolved their tax return filing issue and were considered in "good standing" by the Maryland State Department of Assessments and Taxation as of that date. *See* Defs. Resp. Ex. 1, ECF No. 133-2. So, for a short period of time (November 15, 2011 through

March 6, 2012), Defendants SLI and SLC were forfeited corporate entities, and the Plaintiffs argue that as a result, any filings submitted during that time period are "null and void" and cannot be considered by this Court.  *See* Pls. Mot. at 5-7, ECF No. 132-1.

Although this Court did not explicitly rule on this motion, in granting summary judgment to the Defendants on their Amended Counterclaims, the Court effectively denied it insofar as it considered the Defendants' filings made during its period of forfeiture.  More to the point, it is well established in Maryland that a forfeited corporation may defend against a lawsuit and file counterclaims arising out of the same subject matter as the underlying suit.  *See, e.g.*, *Finch v. Hughes Aircraft Co.*, 469 A.2d 867, 895 (Md. Ct. Spec. App. 1984) ("the statutory bar to an unregistered corporation's maintaining a suit does not preclude it from asserting a counterclaim arising out of the subject matter of the plaintiffs' suit") (citation omitted); *Price v. Upper Chesapeake Health Ventures*, 995 A.2d 1054, 1062 (Md. Ct. Spec. App. 2010) ("an LLC whose rights have been forfeited for tax failures still exists as an entity, but may only defend an action in court, not prosecute one").

Put simply, Defendants SLI and SLC are in good standing with the State of Maryland, and have at all times been permitted to defend against the lawsuit filed against them by the Plaintiffs.  Accordingly, the Plaintiffs' motion for immediate summary judgment (ECF No. 132) is denied as moot.

## II.   DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' DEMAND FOR A JURY TRIAL (ECF NO. 111)

Defendants seek to strike the Plaintiffs demand for a jury trial on the ground that three of the four contracts negotiated between the parties contain broad jury trial waiver

provisions.  The Supreme Court has clearly established that "[t]he right to a jury trial in the federal courts is to be determined as a matter of law in diversity as well as other actions." *Simler v. Conner*, 372 U.S. 211, 222 (1963).  In that case, the Court noted that the federal policy favoring jury trials is "of historic and continuing strength."  *Id.*  This Seventh Amendment right "is not only a fundamental one, but it is one that can be knowingly and intelligently waived by contract."  *Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 832 (4th Cir. 1986).  However, it is well recognized that the right to a jury trial is so fundamental that "courts indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937); *see also* 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2321, 257-58 (3d ed. 2008) (collecting cases) (hereinafter "WRIGHT & MILLER").  In light of this presumption, it has been held that the burden of proving that a jury trial has been waived is upon the party seeking to enforce the waiver.  *See* 9 WRIGHT & MILLER § 2321, 261-62.  "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Teamsters v. Terry*, 494 U.S. 558, 565 (1990).

After carefully reviewing the parties' submissions, this Court finds that the Defendants have failed to meet their burden of proving that the Plaintiffs knowingly and intelligently waived their right to a jury trial.  While it is true that three of the four contracts at issue contain jury waiver clauses, the fourth contract—the License Agreement—is the primary contract governing the claims in this litigation and does not contain a jury trial waiver.  More importantly, the License Agreement contains the following integrations clause:

"Licensee acknowledges that this instrument constitutes the entire agreement of the parties. This Agreement *terminates and supersedes* any prior Agreement between the parties concerning the same subject matter."  License Agmt. ¶ 24.9, ECF No. 114-3 (emphasis added).  Aside from arguing that the Plaintiffs' reliance on the integration clause "contradict[s]" other arguments made by the Plaintiffs, Defs. Reply at 8, ECF No. 129, Defendants do not explain how the jury trial waivers in the promissory notes and asset purchase agreement are binding when the License Agreement expressly "terminates and supersedes" those contracts.

Moreover, the factors traditionally relied on by courts in construing the validity of jury trial waivers—*i.e.*, factors bearing on a party's voluntary and knowing waiver—militate in favor of the Plaintiffs.  *See generally Bank of America, N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 530 (D. Md. 2011) (courts employ a totality of the circumstances approach, and specific relevant factors include the parties' bargaining power, the conspicuousness of the waiver provision, and whether the provision is comprehensible).  It is clear that while the parties negotiated extensively, the Sylvan Defendants possessed far superior bargaining power.  In addition, the waiver language contained in the asset purchase agreement and the promissory notes cannot be considered conspicuous insofar as it is listed on page fifteen of a thirty-two page asset purchase agreement; page five of an eighteen page senior promissory note; and page four of a twenty-one page subordinate promissory note.  *Compare Leasing Serv. Corp.*, 804 F.2d at 833 (upholding jury waiver provision contained in a two-page contract) *with Dreiling v. Peugeot Motors of Am., Inc.*, 539 F. Supp. 402, 403 (D. Co. 1982) ("[a] constitutional guarantee so fundamental as the right to a jury trial cannot be waived

unknowingly by mere insertion of a waiver provision on the twentieth page of a twenty-two page standardized form contract.").

Accordingly, because "the law does not presume the waiver of constitutional rights," *Lake James Cmty. Volunteer Fire Dep't, Inc. v. Burke Cnty., N.C.*, 149 F.3d 277, 280 (4th Cir. 1998), Defendants' Motion to Strike Plaintiffs' Demand for a Jury Trial (ECF No. 111) is denied, and those claims of the Plaintiffs proceeding to trial will be tried before a jury.

## III. DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Plaintiffs' First Amended Complaint alleges twenty-two counts against Defendants. Of those counts, two are for breach of contract, and the rest are common law and statutory tort claims. Defendants seek dismissal of each and every count.

### A. CHOICE OF LAW

As a preliminary matter, a determination must be made as to which state's substantive law should apply in interpreting Plaintiffs' claims. Defendants press for the application of Maryland law, whereas Plaintiffs contend that their claims are governed by Ohio law. Given that the License Agreement executed between the parties contains a forum selection clause designating the State of Maryland as the forum under which that agreement is to be interpreted, this Court has already determined that Maryland law governs the claims asserted pursuant to that agreement. *See OLC v. Sylvan I*, 2012 WL 1067668, at *7 n.8. However, because twenty of twenty-two claims sound in tort, Maryland's choice-of-law provisions apply to those claims. *See Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) ("A federal court hearing a diversity claim must apply the choice-of-law rules of the state in which it sits.").

In tort cases, Maryland adheres to the *lex loci delicti* doctrine, which applies the law of the state where the alleged injury occurred.  *Laboratory Corp. of America v. Hood*, 911 A.2d 841, 845 (Md. 2006).  Because Plaintiffs alleged injuries occurred in Ohio, this Court finds that Ohio law governs Plaintiffs' tort claims, set forth in Counts 3 through 5, 7, 18, and 20 through 22 of the First Amended Complaint.

## B. BREACH OF CONTRACT CLAIMS (COUNTS 1 & 2)

As previously mentioned, on March 27, 2012, this Court granted summary judgment in favor of the Defendants on their Amended Counterclaims.  Of import to the pending motion to dismiss, this Court held that the Plaintiffs breached their contractual obligations by failing to make required payments, and concluded that the Defendants were entitled to summary judgment on their breach of contract counterclaim.  *See OLC v. Sylvan I*, 2012 WL 1067668, at *12.  Accordingly, given that this Court has already determined, as a matter of law, that the Defendants are entitled to summary judgment on their breach of contract claim,[9] this Court implicitly recognized that Plaintiffs' breach of contract allegations are

---

[9]   Given that the Defendants' breach of contract counterclaim arose out of the same contracts at issue in the Plaintiffs' First Amended Complaint, it should be noted that the Defendants asserted that counterclaim as a stand-alone count, and not as a count requesting recoupment.  *See First Nat. Bank of Louisville v. Master Auto Serv. Corp.*, 693 F.2d 308, 310 n.1 (4th Cir. 1982) (noting that "Recoupment is the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very contract giving rise to the plaintiff's claim.").  While Defendants' breach of contract counterclaim could have been styled as a recoupment claim, Federal Rule of Civil Procedure 13(c) specifically recognizes that: "A counterclaim need not diminish or defeat the recovery sought by the opposing party.  It may request relief that exceeds in amount or differs in kind from the relief sought by the opposing party."  This approach has been well recognized:

> Under the common-law recoupment and setoff procedures, defendant's only form of relief within the confines of the action against the defendant was through the reduction or total defeat of plaintiff's claim; defendant could not secure an affirmative recovery.  Rule 13(c), by specifically stating that "a counterclaim need not

without merit.  *See id.* (citing *7-Eleven, Inc. v. McEvoy*, 300 F. Supp. 2d 352, 358 (D. Md. 2004)).  Therefore, Defendants' motion to dismiss is granted with respect to Counts 1 and 2 of the Plaintiffs' First Amended Complaint.

## C.  FRAUD & MISREPRESENTATION CLAIMS (COUNTS 3-5, & 20-22)

Broadly, in Counts 3 through 5, and 20 through 22, Plaintiffs allege that in connection with the sale of the Westlake Learning Center, the Defendants made numerous misrepresentations and material omissions as to the true financial condition of the Center. The general thrust of Plaintiffs' claims is that, in response to pressure on the Sylvan Defendants to sell corporate-owned learning centers, Plaintiffs were pressured to buy the Westlake Learning Center and the Defendants intentionally misrepresented the true financial condition of the Center in order to effect a quick sell.  The Defendants attack these claims on three grounds.

---

diminish or defeat the recovery sought by the opposing party," preserves the right of a party to plead either setoff or recoupment, as well as makes it clear that a claim in excess of the main claim may be interposed.  Indeed, a limitation to the effect that a counterclaim is available only to the extent that it diminishes or defeats plaintiff's claim would not make sense in a modern system that encourages the assertion of affirmative claims by defending parties.  Furthermore, the federal policy, embodied in Rule 54(c), of granting a litigant any remedy to which the litigant is entitled regardless of whether that particular form of relief was demanded in the pleadings, is contrary to a strict requirement that a counterclaim be in the nature of a setoff or a recoupment.  Finally, any restriction on the substantive character of the counterclaim would be inconsistent with the contemporary philosophy of liberal joinder of claims and the federal policy against piecemeal litigation.

6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1426 (3d ed. 2010).

In light of the fact that some of Plaintiffs' claims are not subject to dismissal, and because this Court has yet to determine the appropriate award of damages to the Defendants on their amended counterclaims, any determination regarding the Defendant's entitlement to damages must await the adjudication of the Plaintiffs' claims.

Defendants first challenge the Plaintiffs' fraud and misrepresentation claims on factual grounds.  Specifically, Defendants argue that Janet Tomaskovich's own admissions regarding the financial state of the Westlake Learning Center eviscerate Plaintiffs' misrepresentation claims insofar as her admissions reveal she was fully aware of the financial condition of the Westlake Center.  *See generally* Defs. Mot. at 9-16, ECF No. 114.  However, this argument is misplaced.  In the context of a motion to dismiss, this Court must construe all facts in the light most favorable to the non-moving party—here, the Plaintiffs.  In light of those alleged facts, this Court finds the Plaintiffs fraud and misrepresentation allegations plausible and sufficiently pled.  *See Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, __ (4th Cir. May 14, 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim.  It need only *allege facts* sufficient to *state* elements of the claim.") (emphasis in original) (internal quotation marks and citation omitted).

Second, Defendants argue that there exists no fiduciary duty between the parties, and therefore, Sylvan had no duty to disclose the materials referenced by the Plaintiffs.  As noted by Defendants, the Supreme Court has stated that:

> [T]he duty to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so.  And the duty to disclose arises when one party has information that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.

*Chiarella v. United States*, 445 U.S. 222, 227-28 (1980) (internal quotations omitted).

However, as this Court has previously noted, "[t]he Maryland Franchise Act subjects to civil liability a franchisor who fails to disclose a material fact to a prospective franchisee." *Layton v. AAMCO Transmissions, Inc.*, 717 F. Supp. 368, 372 (D. Md. 1989).  Specifically, the

Maryland Franchise Registration and Disclosure Law ("MFRDL"), MD. CODE ANN., BUS. REG. § 14-229, states that in connection with the sale of a franchise, a person may not:

(1) Employ a device, scheme, or artifice to defraud;
(2) Make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statement made, in light of the circumstances under which it is made, not misleading; or
(3) Engage in an act, practice, or course of business that operates or would operate as a fraud or deceit on another person.

Plaintiffs maintain that the MFRDL obligated the Defendants to disclose the material information they claim was absent in connection with the sale of the Westlake Learning Center. In this regard, while perhaps not rising to the level of a fiduciary duty, Plaintiffs argue that the MFRDL creates a "similar relation of trust and confidence" as required by the Supreme Court in *Chiarella*. In response to this argument, Defendants only contend that it is inconsistent for Plaintiffs to, on the one hand argue that their tort claims are subject to interpretation under Ohio law, but on the other hand, seek solace in a Maryland statute that interposes certain duties relating to the sale of a franchise. This Court finds no inconsistency. First, unlike certain sections of the Code of Maryland Regulations which exempt out of state franchise sales from, particular requirements of the MFRDL,[10] Defendants have not pointed to, and this Court has been unable to find, any such exemptions from the material disclosure requirements of the MFRDL. Second, Ohio law is in accord with this principal. In *Saydell v. Gepetto's Pizza & Ribs Franchise Sys., Inc.*, 652 N.E. 2d 218, 231 (Ohio Ct. App. 1994), the Court of Appeals of Ohio noted that generally a fiduciary relationship does not exist between a franchisee and franchisor, but such a

---

[10] *See OLC v. Sylvan I*, 2012 WL 1067668, at *10 (D. Md. March 27, 2012) (noting that, pursuant to the Code of Maryland Regulations, entities offering sales of franchises outside of the State of Maryland are not subject to the registration requirements.). *See also* discussion *infra* at Section II.H.

relationship may exist in the presence "of a statute expressly creating such a fiduciary relationship, or in the alternative, [with] an understanding, held by both parties to the subject agreement, that a special trust and confidence has been reposed by the franchisee in the franchisor." That Court went on to recognize that, similar to the MFRDL, Ohio statutory law prohibits misrepresentations, false, and misleading statements in connection with the sale of a business. *See id.* (citing OHIO REV. CODE ANN. § 1334.03).

The final ground on which Defendants seek to dismiss Plaintiffs concealment and misrepresentation claims is similarly unavailing. Defendants argue that the integration clause contained in the License Agreement precludes Plaintiffs' misrepresentation claims insofar as the alleged misrepresentations were not contained in the License Agreement. The License Agreement states in relevant part: "Licensee acknowledges that this instrument constitutes the entire agreement of the parties. This Agreement terminates and supersedes any prior agreement between the parties concerning the same subject matter." ECF No. 114, Ex. 2 at ¶ 24.9 (emphasis removed).

However, as recently noted by this Court in a case involving the same Defendants, "the law in Maryland . . . is that a plaintiff can successfully bring a tort action for fraud that is based on false pre-contract promises by the defendant even if (1) the written contract contains an integration clause and even if (2) the pre-contractual promises that constitute the fraud are not mentioned in the written contract. Most of our sister states apply a similar rule." *Next Generation Group, LLC v. Sylvan Learning Ctrs, LLC*, No. CCB-11-986, 2012 WL 37397, at *4 (D. Md. Jan. 5, 2012) (citation omitted). Indeed, Ohio law on this issue is substantially the same. *See Galmish v. Cicchini*, 734 N.E. 2d 782, 790 (Ohio 2000) (in which

the Supreme Court of Ohio noted that "Fraud cannot be merged; hence the doctrine, which is merely only another form of expression of the parol-evidence rule, that prior negotiations and conversations leading up to the formation of a written contract are merged therein, is not applicable to preclude the admission of parol evidence to prove that a written contract was induced by fraud.").

In response, Defendants argue that any alleged omissions by the Defendants are either not material, or as a result of the integration clause in the License Agreement, reliance on any omission by the Plaintiffs would be unreasonable in the face of the terms of that agreement. As recently recognized by this Court, however, whether or not the omissions are material, or whether the Plaintiffs reasonably relied on the alleged misrepresentations or omissions, are *factual* questions inappropriate for a determination at the motion to dismiss stage. *See Next Generation Group*, 2012 WL 37397, at *4 (citing *Greenfield v. Heckenbach*, 797 A.2d 63, 77 (Md. Ct. Spec. App. 2002) for the proposition that "the reasonableness of the plaintiffs' reliance on oral representations could not be resolved at the summary judgment stage and, at least in that case, was an issue 'for the jury to consider.'").

Accordingly, for the reasons stated above, the Defendants Motion to Dismiss is denied with respect to the fraud and misrepresentation claims set forth in Counts 3 through 5, and 20 through 22.[11]

---

[11]   In a separate section in their Motion to Dismiss, the Defendants argue that Counts 20 through 22, which are based on the Maryland Franchise Registration and Disclosure Law, MD. CODE ANN., BUS. REG. § 14-229, are barred by the applicable statute of limitations. Pursuant to MD. CODE ANN., BUS. REG., § 14-227(e), the MFRDL contains a three year statute of limitations. While the First Amended Complaint was filed outside of this limitations period, this Court concludes that Counts 20 through 22 "relate back" to the original Complaint, which was timely. *See* Fed. R. Civ. P. 15(c)("An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set

## D.  TORTIOUS BREACH OF GOOD FAITH (COUNT 6)

Defendants challenge Count 6 of the Plaintiffs First Amended Complaint on the ground that Ohio law does not recognize an independent tort claim for breach of good faith and fair dealing.  While Ohio law recognizes that "every contract includes an implied good faith and fair dealing requirement. . . .  Ohio law does not, however, recognize a separate tort for breach of the duty of good faith and fair dealing. . . .  Indeed, the duty to act 'in good faith' cannot stand alone as a separate cause of action independent from the underlying breach of contract claim."  *Dobrski v. Ford Motor Co.*, 698 F. Supp. 2d 966, 986-87 (N.D. Ohio 2010) (citations omitted).  Consequently, Defendants' Motion to Dismiss is granted with respect to Count 6.

## E.  UNFAIR COMPETITION (COUNT 7)

The basis for Plaintiffs' unfair competition claim is their contention that Defendants improperly infringed on the territory exclusively designated to the Westlake Learning Center. It does not appear as though Defendants have challenged the legal sufficiency of this claim. The issue boils down to a factual dispute regarding whether or not territorial infringement did indeed occur.  Accordingly, Defendants Motion to Dismiss is denied with respect to Count 7.

---

out—or attempted to be set out—in the original pleading.").  While the original Complaint was inartfully pled, Defendants were on notice of the general allegations levied against them.  *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149 (1984) ("The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.") (citation omitted).

## F.  DEFAMATION, FALSE LIGHT, HARM TO REPUTATION (COUNT 8)

Count 8 warrants little discussion and will be dismissed.  Briefly, Plaintiffs contend that: (1) general statements made by Sylvan executives at a 2009 conference regarding "freeloader" franchises somehow rises to the level of defamation; and (2) statements made by defense counsel in this matter after a hearing before this Court about "renegade franchisees" constitutes actionable defamation.  It is clear to this Court, that the statements at issue are nonspecific expressions of opinion that are not actionable under Ohio law. Apart from the protection afforded to speakers under the First Amendment to the United States Constitution, the Ohio Supreme Court "has determined that opinions are a protected form of speech under the Ohio Constitution."  *Rothschild v. Humility of Mary Health Partners*, 840 N.E. 2d 258, 264 (Ohio Ct. App 2005) (citation omitted).  The Ohio Supreme Court has adopted a flexible totality-of-the-circumstances test to determine whether an alleged defamatory statement is, instead, a protected opinion.  *Id.*  Utilizing this test, this Court concludes that the statements at issue are merely statements of opinion and cannot possible serve as the basis of a defamation action.  Accordingly, Defendants' Motion to Dismiss is granted with respect to Count 8.

## G.  TORTIOUS INTERFERENCE IN BUSINESS AND CONTRACTUAL RELATIONS, AND DECEPTIVE TRADE PRACTICE (COUNTS 9, 10, & 12)

Counts 9, 10, and 12 have been previously dismissed by this Court's Memorandum Opinion and Order of April 24, 2012.  *See OLC v. Sylvan II*, 2012 WL 1416905 (granting Defendants Education Solutions, LLC and Randy Rohde's motion to dismiss).

## H. DECEPTIVE & UNFAIR TRADE PRACTICES, AND FAILURE TO REGISTER (COUNTS 11, 16-19)

Counts 11, 16, and 19 of the First Amended Complaint essentially allege that Defendants committed various Ohio and Maryland statutory violations by failing to register the Sylvan franchise prior to offering it to the Plaintiffs for sale.  In the Memorandum Opinion of March 27, 2012, this Court already rejected these claims.  *See OLC v. Sylvan I* 2012 WL 1067668 (D. Md. March 27, 2012) (granting Defendants summary judgment on their amended counterclaims).[12]  Accordingly, Defendants' Motion to Dismiss is granted with respect to Counts 11, 16, and 19.[13]

---

[12]  Specifically, this Court stated:

> The Plaintiffs' final defense, that the Defendants violated the Maryland Franchise Registration and Disclosure Law ("MFRDL"), MD. CODE ANN., BUS. REG. § 14–201, *et seq.*, by not registering the Sylvan franchise prior to offering it to the Plaintiffs, is also without merit.  The MFRDL requires that "a person must register the offer of a franchise with the Commissioner before the person offers to sell, through advertisement or otherwise, or sells the franchise in the State." *Id.* § 14–214.  However, pursuant to the Code of Maryland Regulations, entities offering the sale of franchises outside of the State of Maryland are not subject to the registration requirements: "The registration provisions of the Maryland Franchise Law *do not apply* to an offer or sale of a franchise to a resident of a foreign state, territory, or country who is not a resident of Maryland to the knowledge of the seller."  MD. CODE REGS. 02.02.08.10b (emphasis added).

*OLC v. Sylvan I*, 2012 WL 1067668, at *10.

[13]  Various other Counts contained in the Plaintiffs First Amended Complaint including, *inter alia*, Counts 3-5 and 21-22, are based, in part, on the contention that Sylvan was required to register the sale of the franchise.  While this Court's analysis concerning the MFRDL's registration requirements applies equally to those counts, they are sufficient to withstand Defendants' Motion to Dismiss notwithstanding the Plaintiffs' flawed registration argument.

With respect to Count 17, which alleges an unconscionable sales act or practice under Ohio statutory law, it is clear that that count is time-barred under the applicable statute of limitations.  Under the applicable statute, OHIO REV. CODE ANN. § 1345.02, an action "may not be brought more than two years after the occurrence of the violation which is the subject of suit . . . ."  OHIO REV. CODE ANN. § 1345.10(C).  The events giving rise to this lawsuit occurred in the spring and early summer of 2007, and the original Complaint was not filed until April 16, 2010—well after the applicable statute of limitations passed.  Accordingly, Defendants' Motion to Dismiss is granted with respect to Count 17.[14]

In Count 18, Plaintiffs assert a violation of OHIO REV. CODE ANN. Section 1334 which regulates the sale of Business Opportunity Plans.  In pertinent part, the statute reads:

> "Business Opportunity Plan" means an agreement in which a purchaser obtains the right to offer, sell, or distribute goods or services under all of the following conditions:
>
> (1) The goods or services are supplied by the seller, a third person with whom the purchaser is required or advised to do business by the seller, or an affiliated person.
>
> (2) The purchaser is required to make an initial payment greater than five hundred dollars, but less than fifty thousand dollars, to the seller or an affiliated person to begin or maintain the business opportunity plan.
>
> (3) The seller makes *any* of the following representations:

---

[14]   The applicable statute of limitations does contain a carve-out for consumers who bring a counterclaim based on a violation of the statute.  *See* OHIO REV. CODE ANN. § 1345.10(C) ("However, an action under sections 1345.01 to 1345.13 of the Revised Code arising out of the same consumer transaction can be used as a counterclaim whenever a supplier sues a consumer on an obligation arising from the consumer transaction.").  Plaintiffs argue that "by filing their own Breach of Contract claim against OLC and Tomaskovich on January 26, 2011, Defendants reopened the door on the two (2) year statute of limitations under Ohio Rev. Code § 1345."  Pls. Supp. at 14, ECF No. 118.  Plaintiffs cite no authority for this proposition, however, and this Court has found none. The argument is rejected.

(a) That the purchaser will be provided with retail outlets or accounts, or assistance in establishing retail outlets or accounts, for the sale or distribution of the goods or services;

(b) That the purchaser will be provided locations, or assistance in finding locations, for vending machines, electronic games, rack displays, or any other equipment or display for use in the sale or distribution of the goods or services;

(c) That the purchaser can earn a profit in excess of the initial payment;

(d) That there is a market for the goods or services;

(e) That there is a buy-back arrangement.

OHIO REV. CODE ANN. § 1334.01 (emphasis added). The statute goes on to describe a litany of prohibited actions in connection with the sale of a business opportunity plan. *See* Ohio Rev. Code Ann. § 1334.03. The Plaintiffs First Amended Complaint clearly alleges that the Defendants violated the statute by, *inter alia*, failing to provide the required disclosures, and by engaging in deceptive or unconscionable acts or practices. *See* FAC ¶¶ 287-89.

Here, Defendants seize on representations (c) and (d) of the statute and argue that because the License Agreement specifically disclaimed any guarantee of potential profits or success of the business, Plaintiffs have failed to state a cause of action under Section 1334. However, the statute clearly recognizes that the sale of a business opportunity plan comes under the ambit of the statute so long as the seller of the plan makes *any* of a number of specific representations. Given that the Westlake Learning Center was an operating business prior to the sale to Ms. Tomaskovich, this Court finds it curious for Defendants to argue that they did not represent that "there was a market for Sylvan's goods and services." Defs.

Mot. at 46-47, ECF No. 114.  Ohio courts have clearly recognized that this statute applies to the sale of franchises, *see Saydell v. Gepetto's Pizza & Ribs Franchise Sys., Inc.*, 652 N.E. 2d 218, 231-32 (Ohio Ct. App. 1994), and this Court finds that the Plaintiffs have adequately pled a cause of action under the statute.  Therefore, Defendants' Motion to Dismiss is denied with respect to Count 18.

## I. ANTITRUST CONSPIRACY (COUNTS 13 & 14)

Count 13 of the First Amended Complaint alleges federal conspiracy in restraint of trade in violation of the Sherman Act, 15 U.S.C. § 1, between the Sylvan Defendants, Education Solutions, and Randy Rohde in violation of 15 U.S.C. § 1.[15]  Count 14 alleges a conspiracy under the Valentine Act, OHIO REV. CODE ANN. § 1331, the Ohio analog of the Sherman Act.  *See Schweizer v. Riverside Methodist Hospitals*, 671 N.E. 2d 312, 313 (Ohio Ct. App. 1996) ("The Valentine Act was modeled after the Sherman Antitrust Act . . . , and the Supreme Court of Ohio has interpreted the statutory language in light of federal constructions of the Sherman Act.") (citation omitted).

Section 1 of the Sherman Act prohibits any "contract, combination . . . , or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1.  Here, Plaintiffs have alleged that Defendants have made such an agreement.  The Supreme Court of the United States, in *Bell Atl. Corp. v. Twombly*, held that a

---

[15]  The First Amended Complaint actually alleges conspiracy in restraint of trade in violation of 15 U.S.C. §§ 1.13(a) and 1.15(a).  Plaintiffs have acknowledged that these statutory references contain "typographical errors" and that Plaintiffs meant to rely on 15 U.S.C. § 3 (unlawful conspiracy) and 15 U.S.C. § 13 (unlawful price discrimination).  Given that 15 U.S.C. § 3(a) applies to conspiracies in restraint of trade "in any *Territory of the United States or the District of Columbia*," and the conspiracy at issue is alleged to have occurred in Ohio, 15 U.S.C. § 3 appears to be inapplicable.  However, in a subsequent filing, Plaintiffs acknowledge further "typographical errors," and assert 15 U.S.C. § 1 as the basis for their Count 13 conspiracy allegations.  *See* ECF No. 115 at 36.  This Court will address this claim accordingly.

plaintiff's Section 1 conspiracy complaint must include "enough factual matter (taken as true) to suggest that an agreement was made." 55 U.S. 544, 556 (2007). Defendants have moved to dismiss Plaintiffs' Consolidated Amended Complaint on the ground that it does not meet *Twombly's* pleading requirements.

The allegations and factual assertions in *Twombly* were relatively straightforward. The complaint in that case simply alleged that regional telephone companies were engaged in parallel behavior, and as a result, were not competing. The Court summarized the core allegations of the complaint as follows:

> In the absence of any meaningful competition between the [defendants] in one another's markets, and in light of the parallel course of conduct that each engaged in to prevent competition from [other carriers] within their respective local telephone and/or high speed internet services markets and the other facts and market circumstances alleged above, Plaintiffs allege upon information and belief that [the defendants] have entered into a contract, combination or conspiracy to prevent competitive entry in their respective local telephone and/or high speed internet services markets and have agreed not to compete with one another and otherwise allocated customers and markets to one another.

*Id.* at 551. The Supreme Court found the complaint insufficient because it was based solely on an "allegation of parallel conduct and a bare assertion of conspiracy." *Id.* at 556. The Court noted that "allegations of parallel business conduct, taken alone, do not state a claim under § 1[,]" and that to survive a motion to dismiss, a plaintiff "must allege additional facts that tend to exclude independent self-interested conduct as an explanation for defendants' parallel behavior." *Id.* at 552 (internal quotation marks and citation omitted). "Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 556. Indeed, the Court specifically noted

that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (internal quotation marks and citation omitted).  In short, the Court did not establish a heightened pleading requirement for antitrust cases, *Id.* at 569 n.14, and Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2).

Notwithstanding the fact that *Twombly,* and its successor, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), did not establish a heightened pleading standard for antitrust cases, it is clear that unsupported conclusory allegations will not suffice.  Plaintiffs' conspiracy allegations essentially amount to the following: Randy Rohde and his company, Education Solutions enjoyed a "special relationship" with Sylvan.  FAC ¶ 240.  During the time Tomaskovich negotiated to purchase the Westlake Learning Center, Rohde, due to his favored status with Sylvan, was able to "bump" Ms. Tomaskovich in order to conclude his own purchase with Sylvan first.  *Id.* ¶ 241.  Because Mr. Rohde was favored by Sylvan, he was able to conspire with the Defendants to purchase the surrounding territories and force Tomaskovich out of business.  *Id.* ¶¶ 242-248.  Moreover, as a result of the "conspiracy," the Sylvan Defendants essentially looked the other way when Rohde and Education Solutions infringed on the Westlake Learning Center's exclusive territory.  *Id.* ¶ 248-255.

Under the plausibility standard articulated by *Twombly* and *Iqbal*, Plaintiffs' antitrust conspiracy allegations are simply not plausible.  First, the First Amended Complaint is completely devoid of any specific allegation tending to show that there was an actual agreement.  Second, to the extent that the inferences logically derived from the Plaintiffs'

allegations do somehow rise to the level of alleging parallel conduct between Sylvan and Rohde, the Supreme Court has made clear that "allegations of parallel business conduct, taken alone, do not state a claim under § 1[,]" and that to survive a motion to dismiss, a plaintiff "must allege additional facts that tend to exclude independent self-interested conduct as an explanation for defendants' parallel behavior." *Twombly*, 550 U.S. at 552 (internal quotation marks and citation omitted).  Plaintiffs have failed to allege any facts that tend to exclude the independent self-interested conduct of the Sylvan Defendants and Mr. Rohde.  Put simply, Plaintiffs have failed to state a claim for conspiracy in restraint of trade in violation of the Sherman Act.  Accordingly, Defendants' Motion to Dismiss is granted with respect to Counts 13 and 14.

## J.  CIVIL CONSPIRACY (COUNT 15)

In Count 15 of the First Amended Complaint, Plaintiffs allege only that "Sylvan and ES knowingly and intentionally conspired and colluded to commit a wrongful act against OLC.  OLC experienced great harm from the intentional, wrongful, and conspiring actions of Sylvan and ES."  FAC ¶ 271.  This sole allegation is purportedly based on the antitrust conspiracy claims previously addressed.  For the reasons stated above, this Court concludes that the Plaintiffs have failed to allege with the requisite particularity any conspiracy or agreement between the Sylvan Defendants and Randy Rohde or Education Solutions. Therefore, Defendants' Motion to Dismiss is granted with respect to Count 15.

## IV.  PIERCING THE CORPORATE VEIL AND PROPER PARTIES TO THIS LITIGATION

Contained within the briefing on the Defendants' Motion to Dismiss are numerous arguments regarding the proper parties to this litigation.  Defendants argue that Educate, Inc. is not a proper party to this litigation insofar as it cannot be held vicariously for the actions of its subsidiary corporations, Sylvan Learning, Inc. and Sylvan Learning Centers, LLC.  Alternatively, Plaintiffs argue that Educate, Inc. is a proper party—not on vicarious liability grounds—but because it directly guaranteed the performance of Sylvan Learning, Inc. under the terms of the License Agreement.  Plaintiffs also argue that Sylvan Learning Centers, LLC is the alter ego of Sylvan Learning, Inc., and that the corporate veil between the two companies should be pierced.

This Court finds these arguments confused by the sheer number of issues addressed by the parties, and will withhold ruling on these questions at this time.  Given that today's Memorandum Opinion significantly narrows the issues going forward, the parties are directed to confer regarding a briefing schedule in light of this Court's Opinion on the Defendants' Motion to Dismiss.

## CONCLUSION

For the reasons stated above, the Defendant's Motion to Strike Plaintiffs' Demand for a Jury Trial (ECF No. 111) is DENIED; Plaintiffs' Motion for Immediate Summary Judgment (ECF No. 132) is DENIED as MOOT; and Defendants Motion to Dismiss (ECF No. 114) is GRANTED IN PART and DENIED IN PART.  Specifically, it is denied with respect to Counts 3 through 5, 7, 18, and 20 through 22, and is granted as to all other

counts.  Accordingly, this case will proceed on the Plaintiffs' tortious misrepresentation and omission claims in connection to the sale of the Westlake Learning Center.

A separate Order follows.

Dated:          July 24, 2012

/s/_____
Richard D. Bennett
United States District Judge